IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IVAN KEITH GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 24-00141-KD-B |
| | ) | |
| CITY OF EVERGREEN, ALABAMA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This action is before the Court on the Motion for Summary Judgment, filed by Defendants City of Evergreen, Kenny Edwards, Jerry Caylor, and Mayor Stanley B. Stallworth (collectively, "Defendants"). (Docs. 34, 36). Upon consideration, and for the reasons below, the motion is **GRANTED**.

### I.    Findings of Fact[1]

The City of Evergreen is in Conecuh County, Alabama and has a population of approximately 3,900. Evergreen's mayor is Stanley B. Stallworth ("Mayor" or "Mayor Stallworth"). Mayor Stallworth is an African American male and previously served as a worldwide co-chairman of the diversity, equity, and inclusion committee at the law firm of Sidley Austin. (Doc. 35-1 at 40).

At the time of the events in this case, Evergreen's City Council consisted of five city council members: (1) Chesson McDaniel ("McDaniel"); (2) Jerry Caylor ("Caylor"); (3) Kenny Edwards ("Edwards"); (4) Jimmy Taylor ("Taylor"); (5) Kasey Bradley-Vaughan ("Bradley-Vaughan").

---

[1] The "facts," as accepted at the summary judgment stage, "may not be the actual facts of the case." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013).

Because Evergreen's population is less than 12,000, Mayor Stallworth is a voting member of the Evergreen City Council. (Doc. 35-1 at 18); see also Ala. Code § 11-43-2(b).

In early 2023, Evergreen's Chief of Police (James Simpson) retired. James Simpson is an African American male. Mayor Stallworth appointed Tristan Robinson ("Robinson"), a Caucasian male, as Interim Chief of Police. At the time of the appointment, Robinson was serving as the Assistant Chief of Police.

In March of 2023, Evergreen posted a job vacancy for the Chief of Police position. The job vacancy was posted in the Evergreen newspaper, on Evergreen's website, on the Evergreen Police Department's online portal, and on some national databases. (Doc. 35-1 at 3 (Stallworth's Dec.)). The posting stated that applicants were required to have five years of law enforcement experience, with an appropriate academy certification. (Doc. 35-1 at 314 (Job Posting)). The posting also stated: "Current City employees with requisite qualifications will be considered first." (Id.).

Robinson applied for Chief of Police. Robinson had been working for the Evergreen Police Department since 2000. At the time of his application, Robinson had served as the Assistant Chief of Police and the Interim Chief of Police.

Plaintiff Ivan Keith Gray ("Gray") also applied for Evergreen Chief of Police. Gray had been the Chief of Police for the Town of Gordon Police Department since March 10, 2021.[2] Gray is African American.

The City Council narrowed down the applicants from around fifty-one to four. (Doc. 35-1 at 3 (Stallworth Dec.)). On July 6, 2023, Mayor Stallworth informed the City Council during a public hearing that he had contacted the top four candidates for interviews scheduled for July 17, 2023.

---

[2] The Town of Gordon's total population on the 2020 Decennial Census was 294. See United States Census Bureau, https://data.census.gov/profile?g=160XX00US0130760 (last visited July 16, 2025).

(Id.). During this meeting, Mayor Stallworth expressed thanks for the letters of recommendation for Robinson that previously appeared in the local newspaper. (Id.).

The City Council interviewed the top four candidates, which included Gray and Robinson. During his interview, Gray disclosed that he was previously terminated from the City of Dothan Police Department. (Doc. 35-1 at 334 (Gray Dep.)). Gray admits that no comments were made about race during his interview. (Doc. 35-1 at 332, 342 (Gray Dep.). After the interviews, Mayor Stallworth asked the City Council to discuss and try to come to a unanimous vote on a candidate. However, the City Council could not make a unanimous decision. (Doc. 35-1 at 28 (Stallworth Dep.)).

On August 1, 2023, a City Council meeting was held. (Doc. 35-1 at 474 (Meeting Minutes)). Mayor Stallworth and all five members of the City Council were present. (Id.). Mayor Stallworth called for a nomination to offer the position of Chief of Police to one or more of the candidates interviewed. (Id. at 475). Councilman Taylor nominated Gray. (Id.). Councilwoman McDanial seconded the motion. (Id.). Mayor Stallworth then called for a vote. Gray received three yes votes, two no votes, and one abstention. Taylor, McDaniel, and Bradley-Vaughan voted yes for Gray. Edwards and Mayor Stallworth voted no for Gray. Caylor abstained from voting. [3] Based on the vote, Mayor Stallworth stated that he would put together an offer package for Gray. (Id.).

After the August 1, 2024, City Council meeting, Mayor Stallworth met with Evergreen's City Attorney (Charlie Anderson) and an attorney from the Alabama League of Municipalities (Rob Johnston). (Doc. 35-1 at 4 (Stallworth Dep.)). "It was determined that when the Mayor votes on a

---

[3] Defendants later stated their reason for not voting for Gray: they believed Robinson was better qualified for the position as the internal candidate. (Doc. 35-1 at 21, 94, 178). Taylor and Bradley-Vaughan—who both voted for Gray—did not hear any comments throughout the application process about the Defendants not wanting to hire Gray because of his race. (Doc. 35-1 at 244, 297).

nomination, there would be six voting members of the City Council, which would require a majority vote of four out of the six votes to appoint the Chief of Police in accordance with Ala. Code § 11-43-2." (Id.). Rob Johnston also provided his legal opinion that Mayor Stallworth could appoint the Chief of Police without City Council input pursuant to Alabama Code § 11-43-81, which provides that the mayor has the "power to appoint all officers whose appointment is not otherwise provided by law." (Doc. 35-1 at 5 (Stallworth Dec.)) (quoting Ala. Code § 11-43-81).

On August 2, 2023, Mayor Stallworth emailed the City Council members, advised them of his conversation with Rob Johnston, and explained that he would not be making an offer of employment to any of the candidates who applied for the Chief of Police position. (Doc. 35-1 at 5 (Stallworth Dec.)). Two days later, the Evergreen Police Department sent correspondence to Mayor Stallworth and the City Council expressing the Department's disappointment with the disrespect that was shown to Interim Police Chief Robinson. (Doc. 35-1 at 483 (Recommendation Letter)). The recommendation letter was signed by the entire Evergreen Police Department with the exception of one officer. (Doc. 35-1 at 42, 199 (Stallworth & Edwards Deps.)).

On August 6, 2023, Mayor Stallworth informed Gray that Evergreen's appointment of the new Chief of Police remained open, and that he anticipated the matter would be resolved at the next City Council meeting on August 15, 2023. (Doc. 35-1 at 485). At the August 15, 2023, City Council meeting, Mayor Stallworth explained that Gray was not nominated as Chief of Police because he did not receive the required four votes. (Doc. 35-1 at 297 (Bradley-Vaughn Dep.)). Mayor Stallworth then appointed Robinson as Chief of Police. (Doc. 35-1 at 29 (Stallworth Dep.)).

A week later, Gray received a letter from the City of Evergreen informing him that the Chief of Police position had been filed with an internal candidate. (Doc. 35-1 at 336 (Gray Dep.)). Gray admits that Mayor Stallworth never offered him the Chief of Police position. (Id.).

## II.    Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome" of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists. Id.

The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011). The movant meets this burden by identifying affirmative evidence (pleadings, depositions, answers to interrogatories, admissions on file, etc.) to support its claim that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A). If the nonmovant bears the burden of persuasion at trial, the movant may also make a prima facie showing of summary judgment by demonstrating that the nonmovant's evidence is insufficient to establish an essential element of its claim. Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1057 (11th Cir. 2020); Fed. R. Civ. P. 56(c)(1)(B).

If the movant meets its burden under Rule 56(c), summary judgment will be granted unless the nonmovant offers some competent evidence that could be presented at trial showing that there is a genuine dispute of material fact. Celotex, 477 U.S. at 324. If the movant met its burden by pointing "to specific portions of the record . . . to demonstrate that the nonmoving party cannot meet its burden of proof at trial," the nonmovant must "go beyond the pleadings" to designate specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." Anderson, 477 U.S. at 248. Instead, the court must

5

"view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat, 658 F.3d at 1307. Thus, summary judgment is only proper when a movant shows that no reasonable jury could find for the nonmovant—even when the evidence and inferences are drawn in the nonmovant's favor.

### III.    Analysis

Gray's amended complaint alleges four causes of action: (1) race discrimination in violation of Title VII; (2) race discrimination in violation of the Equal Protection Clause under 42 U.S.C. § 1983; (3) race discrimination in violation of 42 U.S.C. § 1981; (4) and declaratory judgment relief based on a violation of due process and Alabama Code § 11-43-160. (Doc. 1-2). Gray's Title VII claim only remains against the City of Evergreen. The other claims remain against the City of Evergreen and against Stallworth, Edwards, and Caylor in their individual capacities. (Doc. 26). Defendants move for summary judgment as to all remaining claims.

#### A.  Discrimination Claims: The First, Second, and Third Causes of Action

Gray's first, second, and third causes of action allege race discrimination pursuant to Title VII, Section 1981, and Section 1983. (Doc. 1). The legal elements of these claims are identical. See Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985). A plaintiff asserting discrimination under Title VII and under Sections 1981 and 1983 must prove intentional discrimination. Id. "Therefore, we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims." Id.[4]

To survive summary judgment, "a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in her favor." Lewis v. City of Union City, Ga., 918 F.3d

---

[4] Gray "adopts his argument from his Title VII claims for purposes of his Civil Rights Claims pursuant to Section 1983 and 1981 regarding the individual defendants." (Doc. 40 at 19).

1213, 1220 (11th Cir. 2019) (*en banc*) ("Lewis I"). A plaintiff can do this in three ways. *First*, by presenting direct evidence of discriminatory intent. See, e.g., Jefferson v. Sewon America, Inc., 891 F.3d 911, 921–22 (11th Cir. 2018).[5] *Second*, by satisfying the McDonnell Douglas burden-shifting framework. Lewis I, 918 F.3d at 1220. *Third*, by demonstrating a "convincing mosaic" of circumstantial evidence that warrants an inference of intentional discrimination. See, e.g., Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." Tynes v. Fla. Dep't of Juv. Just., 88 F.4th 939, 941 (11th Cir. 2023), cert. denied sub nom. No. 23-1235, 2024 WL 4426607 (U.S. Oct. 7, 2024).

### 1. Gray fails to satisfy the McDonnell Douglas burden-shifting framework

"Properly understood, McDonnell Douglas is an evidentiary framework that shifts the burden of production between the parties to figure out if the true reason for an adverse employment action was the employee's race." Tynes, 88 F.4th at 941. Under Step One of this framework, "a plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." Lewis I, 918 F.3d at 1220–21.

However, both parties assume that the fourth element of a prima facie case for failure to hire only requires showing the position was filled by a person outside of the plaintiff's protected class. (Doc. 26 at 16; Doc. 40 at 14). The parties' confusion likely results from the lack of clarity in the caselaw. For example, Joe's Stone Crabs guides that "a traditional failure-to-hire case" does not

---

[5] Gray fails to provide direct evidence of discriminatory intent. Instead, he relies on the McDonnell Douglas framework and a convincing mosaic.

require a comparator in the prima facie stage. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002). Even after Lewis I, the Eleventh Circuit has repeated the traditional prima facie elements that do not require a comparator. See Tolley v. Mercer Univ., No. 22-13283, 2023 WL 8253812, at *3 (11th Cir. Nov. 29, 2023) (*per curiam*). But in Lewis I, the Eleventh Circuit "h[e]ld that when a plaintiff relies on the McDonnell Douglas burden-shifting framework to prove an intentional-discrimination claim using circumstantial evidence, she must demonstrate—*as part of her prima facie case*—that she was treated differently from other individuals with whom she was similarly situated in all material respects." Lewis I, 918 F.3d at 1231 (emphasis added).

Although Lewis I was not a failure-to-hire case, the Eleventh Circuit decided it en banc "to clarify once and for all the proper standard for comparative evidence in intentional-discrimination cases." Lewis I, 918 F.3d at 1218. And the Eleventh Circuit clarified the scope of its comparator requirement: "To be clear, the 'similarly situated in all material respects' standard that we embrace today applies to all discrimination claims pursued under McDonnell Douglas," which includes failure-to-hire cases. Lewis I, 918 F.3d at 1226 n.11.

Recently in Rosado v. Secretary, Department of the Navy, 127 F.4th 858, 866 (11th Cir. 2025), the plaintiff sought to prove a prima facie case of intentional discrimination for failure-to-promote under the McDonnell Douglas framework without providing a comparator. Rosado, 127 F.4th at 866. The Eleventh Circuit explained that the caselaw that plaintiff relied on "is no longer good law." Id. "In fact, in Lewis I, we rejected the same argument [the plaintiff–appellant] raises—that the comparator analysis is not a necessary part of a plaintiff's prima facie case." Id. "And while Lewis I isn't a failure-to-promote case, we were 'clear[ ] [that] the "similarly situated in all material respects" standard that we embrace[d] [there] applies to all discrimination claims pursued under McDonnell Douglas.'" Id. (alterations in original) (quoting Lewis I, 918 F.3d at 1226 n.11).

Therefore, whether Gray alleges failure to hire or wrongful termination makes no material difference to his prima facie requirements. He must provide a comparator at the prima facie stage regardless. Lewis I, 918 F.3d at 1218 (holding that "a meaningful comparator analysis must be conducted at the prima facie stage of McDonnell Douglas's burden-shifting framework, and should not be 'move[d]' to the pretext stage"). [6]

Returning to the burden-shifting framework, if a plaintiff makes a prima facie showing of discrimination, the burden shifts to the defendant. Id. The defendant can rebut the presumption "by offering evidence of a valid, non-discriminatory justification for the adverse employment action." Id. (Step Two). If the defendant rebuts the presumption, the plaintiff must demonstrate that the defendant's proffered reason was "merely a pretext for unlawful discrimination." Lewis I, 918 F.3d at 1221 (Step Three). This obligation "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been" intentionally discriminated against. Id. (alterations in original) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

i.    The prima facie stage

Gray "bears the initial burden of establishing a prima facie case of discrimination by showing (1) that [he] belongs to a protected class, (2) that [he] was subjected to an adverse employment action, (3) that [he] was qualified to perform the job in question, and (4) that [his] employer treated 'similarly situated' employees outside [his] class more favorably." Lewis I, 918 F.3d at 1220–21.[7]

---

[6] Lewis I explains that establishing a prima facie case of discrimination entitles the plaintiff to victory if the employer cannot provide a nondiscriminatory reason. Lewis v. City of Union City, Ga., 918 F.3d 1213, 1222 (11th Cir. 2019) (en banc). Moving the comparator assessment out of the prima facie stage and into the pretext stage "would allow the plaintiff to proceed—and to potentially win—without any good ground for presuming that discrimination has occurred." Id. at 1223.

[7] Another way to frame the failure-to-hire elements post-Lewis I follows:

Neither party disputes that Gray is African American. Thus, Gray makes a prima facie showing that he is a member of a protected class (the first element). There is a dispute over what kind of adverse employment action occurred. Defendants argue that Gray was never hired, so Gray cannot show that he was wrongfully terminated. (Doc. 36 at 15). Regardless, Gray was either not hired or terminated. An adverse employment action for purposes of race discrimination in the employment context includes "ultimate employment decisions" such as "termination, failure to hire, or demotion." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Thus, Gray makes a prima facie showing that he was subjected to an adverse employment action (the second element).

Regarding the third element, Defendants argue that "Gray cannot present substantial evidence that he was a qualified individual." (Doc. 36 at 15). In support, Defendants state: "Gray was not the most qualified for the position given the information provided to Mayor Stallworth and the City Council regarding Gray's previous employment history and the fact that Gray was not an internal candidate." (Id.). But Defendants' arguments raise the prima facie bar established by the McDonnell Douglas framework. Gray does not have to "present substantial evidence" that he was the "most qualified." Gray simply needs to show that he "was qualified to perform the job in question." Lewis I, 918 F.3d at 1220–21.

---

[A] plaintiff must show that: (1) she belongs to a protected class; (2) she applied and was qualified to fill a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) someone outside the protected class who was not better qualified was hired instead. See Brown v. Alabama Dept. of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010). The comparators for the fourth prong must be "similarly situated in all material respects." Lewis v. City of Union City, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).

Weatherington v. Dothan City Bd. of Educ., No. 1:19-CV-414-RAH-SMD, 2020 WL 7699844, at *11 (M.D. Ala. Dec. 28, 2020).

Based on Defendants' own statement of the facts, Gray was qualified to perform the job in question. Defendants do not dispute that Gray met the minimum qualification requirements posted in the City's job vacancy. (Doc. 36 at 6). Gray was one of four finalists from the over fifty applications. (Doc. 36 at 7). Thus, Gray makes a prima facie showing that he was qualified to perform the job (the third element).

The remaining burden for Gray is showing that his employer treated "similarly situated" employees outside of his class more favorably. This requires Gray to present "evidence of a comparator." Tynes, 88 F.4th at 944. A comparator is "similarly situated in all material respects." Id. Although this is "a high bar to meet," id. at 947, "the plaintiff and her comparators need *not* be 'similar in all but the protected ways.'" Lewis I, 918 F.3d at 1227 (quoting Young v. United Parcel Serv., Inc., 575 U.S. 206, 228 (2015)). The relevant inquiry is "whether the employer subjected them to different employment policies." Lathem v. Dep't of Child. & Youth Servs., 172 F.3d 786, 793 (11th Cir. 1999). For example, comparators may be valid where the plaintiff and the comparators were all subject to the same "workplace rules or policies." Id.

The all-material-respects standard "leaves employers the necessary space to make appropriate business judgments." Lewis I, 918 F.3d at 1228. "An employer is well within its rights to accord different treatment to employees who are differently situated in 'material respects'—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories." Id. This standard "serves the interest of sound judicial administration by allowing for summary judgment in *appropriate* cases—namely where the comparators are simply too dissimilar to permit a valid inference that invidious discrimination is afoot." Id. at 1229.

Here, Gray offers Robinson as a comparator. Gray argues that Robinson is "a less qualified applicant who is not" a member of Gray's "protected class." (Doc. 40 at 18). The problem for Gray,

however, is that Robinson is not "similarly situated in all material respects." Tynes, 88 F.4th at 944. Robinson was an internal applicant. Gray was an external applicant. This difference was material based on the City's own vacancy posting: "Current City employees with requisite qualifications will be considered first." (Doc. 35-1 at 314). Moreover, during his interview with the City, Gray revealed that he was terminated from the City of Dothan Police Department. (Doc. 35-1 at 334).

On the other hand, Robinson had worked for the City of Evergreen's Police Department since 2000 and had been the Interim Chief of Police since February of 2023. (Doc. 35-1 at 424; Doc. 36 at 7). In fact, Robinson had the support of the entire Evergreen Police Department apart from one officer. Thus, the Defendants were "well within [their] rights to accord different treatment" to Robinson and Gray based on their "different work histories." Lewis I, 918 F.3d at 1228.

In short, Gray fails to show that the Defendants treated similarly situated employees outside his class more favorably. The offered comparator was an internal applicant, and internal applicants were given preference because the offered comparator was an internal applicant. Therefore, Gray fails to present a prima facie case of race discrimination under the McDonnell Douglas framework.

ii.    The pretext stage

Even if the Court did not conduct a meaningful comparator analysis at the prima facie stage as required, the material differences between Gray and Robinson show legitimate, non-discriminatory reasons for the City's employment action. The City desired to give preference to internal applicants, and the City was concerned about Gray's previous termination from the City of Dothan Police Department. Thus, the burden would shift back to Gray to prove pretext.

An employee shows pretext by casting sufficient doubt on the employer's offered nondiscriminatory reason for taking the employment action. See Combs v. Plantation Patterns, 106

F.3d 1519, 1538 (11th Cir. 1997). An employee does this by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Id. However, a "reason is not pretext for discrimination 'unless it is shown both that the reason was false, *and that discrimination was the real reason*.'" Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis added) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

To start, Gray cannot show that the reasons the Defendants gave for wanting Robinson hired are false. The Defendants stated that they favored Robinson because he was the only internal applicant of the final four. (Doc. 35-1 at 21, 94, 178). It is undisputed that internal applicants were supposed to be given first consideration, and Robinson (as the internal applicant) had the support of the Evergreen Police Department.

Moreover, Gray's evidence is insufficient for a jury to find that discrimination was the real reason why Robinson was hired. Gray argues that the Defendants' reasons are pretextual because the Mayor's Executive Assistant heard the Mayor state "that as long as they kept the white people happy, then they would be fine." (Doc. 40 at 15). Gray argues that this statement, in conjunction with the testimony of various City Council Members, shows that they "concocted a scheme, design, or plan to hire someone outside of [Gray's] protected class." (Id.). This evidence, viewed in the light most favorable to Gray, is insufficient to prove pretext.

Isolated and general racial remarks are not direct evidence of discrimination when they are "too remote in time or too attenuated." Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1291 (11th Cir. 1998). However, isolated general racial remarks may constitute circumstantial evidence of

discrimination. Id. The "proper inquiry" is whether the remark, "when read in conjunction with the entire record," is circumstantial evidence of the decisionmaker's "discriminatory attitude." Id.

Here, the alleged racial statement, which Mayor Stallworth denies, was general in nature and made *more than two years* prior to Robinson's hire. This isolated statement is too remote in time and too attenuated to the challenged action to show the direct discrimination against Gray. Rojas v. Fla., 285 F.3d 1339, 1343 (11th Cir. 2002) (explaining that remarks that are isolated and unrelated to the challenged employment decision are not direct evidence of discrimination).

When read in conjunction with the entire record, this statement fails to show circumstantial evidence of a discriminatory attitude. Gray makes the conclusory allegation that the statement, "in conjunction with testimony of various City Council Members" regarding the voting process, shows that the Defendants "concocted a scheme" to hire someone outside of Gray's protected class. (Doc. 40 at 15). But Gray fails to direct the Court to evidence in support of this contention. The record actually shows that race was not a consideration. For example, the Executive Assistant did not recall the Mayor making any race-related comments during the selection process for Chief of Police. (Doc. 43-1 at 25; Doc. 36 at 13). And neither did two of the council members who voted for Gray. (Doc. 35-1 at 244, 297).

Even when viewed in the light most favorable to Gray, the Mayor's general and isolated racial remark is not sufficient to prove that the Defendants' reasons for hiring Robinson were pretext for discrimination. Therefore, Gray fails to prove intentional discrimination under the McDonnell Douglas framework.

### 2.  Gray fails to display a convincing mosaic

Apart from the McDonnell Douglas framework, an employee can still survive summary judgment by presenting a "convincing mosaic" of "circumstantial evidence that creates a triable

issue concerning the employer's discriminatory intent." <u>Jenkins v. Nell</u>, 26 F.4th 1243, 1250 (11th Cir. 2022). "But a 'convincing mosaic' is a metaphor, not a legal test and not a framework." <u>Berry v. Crestwood Healthcare LP</u>, 84 F.4th 1300, 1311 (11th Cir. 2023). "The convincing mosaic approach is—in its entirety—the summary judgment standard." <u>McCreight v. AuburnBank</u>, 117 F.4th 1322, 1335 (11th Cir. 2024). It requires "enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." <u>Tynes</u>, 88 F.4th at 946 (quoting <u>Jenkins</u>, 26 F.4th at 1250).

In proving a convincing mosaic, a plaintiff "may point to any relevant and admissible evidence." <u>Id.</u> at n.2. Probative evidence is likely "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." <u>Id.</u> (quoting <u>Jenkins</u>, 26 F.4th at 1250). The convincing mosaic standard can allow a plaintiff to survive summary judgment even when she cannot identify a similarly situated comparator. <u>Id.</u>

Gray argues that he has presented sufficient evidence of a convincing mosaic for three reasons: (1) Gray was voted in by the City Council, (2) Gray was the most qualified, and (3) the Mayor's Executive Assistant heard the mayor make a statement about keeping white people happy. But this evidence, viewed in the light most favorable to Gray, is not enough for a reasonable jury to infer intentional discrimination. Simply put, this evidence is insufficient to show that the City's reasons for hiring Robinson were pretext for discrimination.

First, whether Gray was "voted in" by the City Council is not probative evidence of race discrimination. Gray has not provided any evidence that any of the Defendants made racial statements concerning the hiring of the Chief of Police. To the contrary, the deposition testimony

15

elicited by Gray shows that race was not discussed by the Defendants and that Robinson had support as the local applicant. (Doc. 35-1 at 244, 296–97). Ultimately, the decision to hire Robinson was made by Mayor Stallworth. Mayor Stallworth and Gray are the same race. And Mayor Stallworth previously served as the worldwide co-chair of diversity, equity, and inclusion at the law firm of Sidley Austin. (Doc. 35-1 at 31). Even if Gray was voted in by the City Council, it does not paint a convincing mosaic of race discrimination.

Second, whether Gray was the most qualified is not the relevant inquiry. A plaintiff cannot establish pretext simply by showing that she is more qualified than the person hired. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001). "Rather, [the plaintiff] must adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'" Id. (quoting Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir. 2001)). Thus, the relevant inquiry is whether Gray's qualifications were so superior to Robinson's to allow a reasonable jury to conclude that the City's reason for hiring Robinson was pretext for discrimination. Id. at 1269.

Here, Robinson had worked for the City of Evergreen's Police Department since 2000 and had been the Interim Chief of Police since February of 2023. (Doc. 35-1 at 424; Doc. 36 at 7). Robinson had received recommendation letters signed by the entire Evergreen Police Department apart from one officer. (Doc. 35-1 at 199). The City stated preference for internal applicants. Therefore, it cannot be said that Gray's qualifications were so superior to Robinson's to allow a reasonable jury to infer intentional discrimination against Gray.

Third, the alleged racial statement made by the Mayor is insufficient to prove pretext. This statement is isolated and unrelated to the challenged actions. In fact, Gray has not offered any other evidence that creates any mosaic of race discrimination. Without evidence showing a

16

discriminatory attitude against Gray, the Mayor's alleged statement cannot support an inference of discrimination. Therefore, Gray fails to present a convincing mosaic of race discrimination.

### 3. Gray's discrimination claims cannot survive under the mixed-motive theory

"Title VII offers plaintiffs two theories of discrimination: single-motive and mixed-motive." McCreight v. AuburnBank, 117 F.4th 1322, 1330 (11th Cir. 2024). Under a single-motive theory, a plaintiff must demonstrate that "illegal discrimination was the but-for cause" of the adverse employment action. Id. Under a mixed-motive theory, a plaintiff "contends that both legal and illegal reasons motivated her firing." Id. Thus, an "employee can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on sex or gender, 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." Quigg v. Thomas Cnty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e-2(m)).[8]

Gray argues that his evidence creates "a genuine issue for trial as to whether his race was, at least, a 'motivating factor' in the defendants' decision to terminate him or not to hire him, as Chief of Police." (Doc. 40 at 10–11). By citing to 42 U.S.C. § 2000e-2(m) and discussing a "motivating factor," Gray appears to be arguing that his discrimination claims survive under the theory of mixed-motive discrimination. (Doc. 40 at 13).

"Mixed-motive discrimination . . . allows for liability when an employment decision motivated by a *legitimate* reason—usually poor work performance—is also infected by an *illegitimate* reason—illegal discrimination." McCreight, 114 F.4th at 1326. A plaintiff only needs to show that an illegal reason played a part in the decision—not that it was dispositive. Id. at 1331. Still, a

---

[8] Mixed-motive theory offers the same potential remedies as single-motive theory (compensatory and punitive damages plus back pay and injunctive relief). McCreight v. AuburnBank, 117 F.4th 1322, 1331 (11th Cir. 2024) "But there is one important difference: if a plaintiff prevails under a mixed-motive theory, an employer can still avoid damages and certain equitable relief by showing that it would have taken the same action even without the illegal motivation." Id.

plaintiff alleging mixed-motive discrimination must provide "sufficient evidence for a reasonable jury to infer intentional discrimination." Id.

Here, Gray offers no additional evidence in support of his contention that "racial animus" was "a motivating factor." (Doc. 40 at 11). As explained, the evidence Gray offers to support his discrimination claims does not allow a reasonable jury to infer intentional discrimination. Accordingly, Gray's discrimination claims cannot survive under a mixed-motive theory.

In sum, Gray must show that a reasonable jury could infer intentional discrimination to avoid summary judgment on his discrimination claims. Gray fails to present sufficient evidence of intentional discrimination under the McDonnell Douglas framework. Gray fails to present a convincing mosaic of intentional discrimination. And Gray's discrimination claims cannot survive under a mixed-motive theory. Accordingly, the Defendants are entitled to summary judgment on the first, second, and third causes of action alleging discrimination.

## B. Declaratory Judgment Relief: The Fourth Cause of Action

In Gray's final cause of action, he seeks declaratory judgment relief based on a violation of due process under Alabama Code § 11-43-160. (Doc. 1-2 at 63). Defendants' motion for summary judgment argues that Gray is not entitled to equitable relief because he cannot present any evidence that Defendants were in violation of Alabama law. (Doc. 36 at 24). Gray's response fails to address Defendants' argument regarding the claim for declaratory judgment relief. Defendants argue that Gray's failure to address this claim should result in this claim being dismissed. (Doc. 42 at 11). "Regardless, Defendants maintain that Gray's claim fails because it is undisputed that Gray was never hired as Chief of Police." (Id.).

The Court could deem Gray's failure to respond to the declaratory judgment claim as Gray's abandonment of that claim: "[W]here the non-moving party fails to address a particular claim

18

asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned." Powell v. Am. Remediation & Env't, Inc., 61 F. Supp. 3d 1244, 1253 (S.D. Ala. 2014), aff'd, 618 F. App'x 974 (11th Cir. 2015); see also Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (explaining that claim was abandoned and affirming grant of summary judgment as to claim presented in complaint but not raised in plaintiff's initial response to summary judgment motion). Nevertheless, the Court will analyze whether Defendants are entitled to summary judgment as a matter of law.

Alabama Code § 11-43-160 deals with the removal of city officers after their appointment. It provides that any person appointed to office in any city "may, for cause, after a hearing, be removed by the officer making the appointment." Ala. Code § 11-43-160(a)(2). Thus, Gray's claim under Alabama Code § 11-43-160 hinges on his argument that he was appointed as Chief of Police.

### 1. Under the plain language of the relevant Alabama laws, Gray was never appointed as Chief of Police.

First, it is clear that Mayor Stallworth had the authority to unilaterally appoint the Chief of Police. But because he initially chose to have the City Council determine the hire, the Court must consider whether Gray was appointed. Defendants argue that Gray was never appointed by the City Council because Mayor Stallworth is considered for purposes of a quorum, and Gray only received three of the six votes that constituted the quorum. (Doc. 36 at 25). Defendants are correct that Mayor Stallworth is considered for purposes of a quorum: "In all towns or cities, a majority of the whole number of members to which such corporation is entitled, including the mayor in towns and cities of less than 12,000 population, shall be necessary to constitute a quorum." Ala. Code § 11-43-48. But the issue is not whether there was a quorum at the meeting. A quorum simply means "the minimum number of members . . . who must be present for a deliberative assembly to

legally transact business. or members of a body that is required to be present at a given meeting." Quorum, Black's Law Dictionary (12th ed. 2024).[9]

The real issue is whether the number of votes Gray received at the meeting was sufficient to appoint him as Chief of Police. The first question is how many votes were required. The common-law rule is that "a majority of any body constitutes a quorum for the transaction of business, and a majority of the quorum concurring is sufficient to take any particular action." Mann v. Key, 345 So. 2d 293, 296 (Ala. 1977); see also LEAD Educ. Found. v. Alabama Educ. Ass'n, 290 So. 3d 778, 790 (Ala. 2019). However, a specific statutory provision may displace the common-law rule. For example, in Mann v. Key, the Alabama Supreme Court explained that the statutory language requiring a "majority of the total membership of the governing body" meant that "a majority vote of the total membership"—not a majority of a quorum—was required. Mann, 345 So. 2d at 296.

Here, Gray did not receive a majority vote of the quorum because he received three votes out of the six individuals present. Yet, a specific statutory provision appears to mandate what is required for the election or appointment of officers: "All elections of officers shall be made viva voce, and a concurrence of a majority of the members to the council shall be required, and all members of the council may vote any provision of law to the contrary notwithstanding." Ala. Code § 11-43-45. Thus, under this specific statutory provision, Gray must have received the majority vote of the members to the council.

Next, the question is whether Gray received the majority vote of the members of the council. Alabama Code § 11-43-2(b), which governs the exercise of legislative functions in municipalities, provides the answer:

---

[9] In other words, Alabama Code § 11-43-48 (titled Proceedings – Quorum) provides that four members (a majority of the Evergreen City Council including the Mayor) is the minimum number required for the City to conduct proceedings.

> In all cities and towns having a population of less than 12,000 inhabitants according to the last or any subsequent federal census, the legislative functions shall be exercised by the mayor and five aldermen. The mayor shall preside over all deliberations of the council. At his or her discretion he or she may vote as a member of the council on any question coming to a vote, except in case of a tie, in which event he or she must vote.

Ala. Code § 11-43-2(b). This means that the Mayor and the City Council exercise all legislative functions and that the Mayor may vote as a member of the council along with the five council members. Evergreen had five councilmembers and one mayor. Mayor Stallworth, at his discretion, voted "as a member of the council." Ala. Code § 11-43-2(b). Thus, at least four out of six votes were required for Gray to be effectively appointed.

Here, Gray received three out of six potential votes. Therefore, Gray did not receive a majority of the votes of the council, and Gray was not appointed under Alabama law.

## 2. The Court's conclusion regarding the interpretation of the relevant Alabama laws is consistent with both logic and history.

To start, statutory provisions that usurp the common-law rule and require a majority of the body rather than just a majority of the quorum are intended to heighten the voting requirements. See Roach v. Bynum, 403 So. 2d 187, 192 (Ala. 1981) (explaining this idea in the context of business organizations). It would defy logic for the statutory rule (requiring a majority vote of the members) to place a lower burden on the voting requirements than the common-law rule (a majority of the quorum present).

For example, if a mayor was counted as part of the quorum but not as a part of the council vote, a nominee that a mayor does not vote for could lose the quorum vote (with three out of six) but win the council vote (with three out of five). This is exactly what happened here. If the Mayor's vote did not count under the statutory provision, Gray would have lost the majority quorum vote (with three out of six) but won the majority council vote (with three out of five).

Historically, these same issues have been decided with the same results. In Reese v. State, the Alabama Supreme Court addressed both the issue of whether Alabama's statutory provision requiring a majority of all the members of council was controlling and the issue of whether a mayor can constitute a member of the council. Reese v. State, 62 So. 847, 850 (Ala. 1913). There, the appellee argued that a majority of a quorum held the right to elect—even though Alabama Code providing that "a majority of the whole number of elected members to the council shall be required." Id. at 850 (quoting Section 1192, Subsection 7, Code of Alabama 1907). The appellee also argued that the president of the city council could not vote and that he could not be considered a councilman—even though the Alabama Code provided that in towns of less than 6,000 "the legislative functions shall be exercised by the mayor and five aldermen [and] the mayor shall vote with and preside over the deliberations of the council." Id. at 849 (quoting Section 1064, Code of Alabama 1907 as amended by the act of August 20, 1909).

The Alabama Supreme Court followed "the plain language of the act" and concluded that it required that "a majority of the whole number of members elected to the council"—not a majority of a quorum. Reese, 62 So. at 850. And the Alabama Supreme Court explained that the president of the council must be considered a councilman when he votes with the council pursuant to law. Id. Put another way, the legislature may confer on a mayor "the functions of a member of the council in every respect, and if the legislation on the subject calls for such a construction he must be regarded as a councilman." Id.[10]

Finally, the same issue of the minimum votes needed to appoint an officer in a town of under 12,000 was addressed in an Opinion of the Attorneys General. Municipalities – Employees,

---

[10] Also relevant to the present case, the Alabama Supreme Court concluded that an abstention did not reduce the required number of votes for a majority. Reese v. State, 62 So. 847, 850 (Ala. 1913).

<u>Employers, Employment</u>, Ala. Op. Att'y Gen. No. 81-00200 (Jan. 28, 1981). There, the Attorney General made the same findings that the Court makes today. First, Alabama Code § 11-43-45 requires a majority vote of the council to appoint officers. <u>Id.</u> Second, Alabama Code § 11-43-21 "provides that in towns of less than 12,000 the mayor and the council exercise all legislative functions and that the mayor may vote as a member of the council along with the five council members." <u>Id.</u> "Therefore, 'a concurrence of a majority of the whole number of elected members to the council' must be construed as requiring four affirmative votes out of six potential votes.'" <u>Id.</u>

In sum, Gray likely abandoned his claim for equitable relief by failing to respond to the Defendants' motion for summary judgment. Regardless, Alabama Code § 11-43-160, which deals with the removal of city officers after their appointment, is not applicable because Gray was never appointed as Chief of Police. Therefore, Defendants are entitled to summary judgment on Gray's claim for declaratory judgment relief as a matter of law.

## IV.    Conclusion

Gray alleges that Defendants racially discriminated against him and that Defendants violated Alabama law by improperly removing him from an appointed position as Chief of Police. But Gray fails to present evidence from which a reasonable jury could infer intentional discrimination, and Gray was never appointed as Chief of Police as a matter of law. Therefore, Defendants motion for summary judgment is **GRANTED**.

**DONE** and **ORDERED** this **18th** day of **July 2025**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**